# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ROBERT FLEENOR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WEBCOLLEX LLC d/b/a CKS FINANCIAL and VELOCITY INVESTMENTS LLC, <br><br> Defendants. | Case No.: 18-cv-797 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection Practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Robert Fleenor is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that he engaged in a consumer transaction.

6. Defendant Webcollex, LLC ("Webcollex") is a foreign limited liability company located at 505 Independence Parkway, Suite 300, Chesapeake, Virginia 23320 and with Wisconsin registered agent C T Corporation System, 301 S. Bedford St. Suite 1, Madison, Wisconsin 53703.

7. Webcollex does business under the fictitious or trade name "CKS Financial."

8. Webcollex is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. Webcollex is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Webcollex is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant Velocity Investments, LLC ("Velocity") is a foreign limited liability company with its principal place of business located at 1800 Route 34 North, Suite 404A, Wall, NJ 07719 and with Wisconsin registered agent Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

11. Velocity is a "debt collector" as defined by Wis. Stat. § 427.103(3), in that Velocity is directly engaged in the business of a collection agency, soliciting claims for collection and collecting such claims alleged to be owed or due a merchant by a customer.

12. Velocity is engaged in the business of a collection agency under Wisconsin law, in that it purchases and receives assignment of consumer debts that are in default at the time Velocity acquires them.

13. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to

2

collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

14. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

15. Velocity is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former consumer loan account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

16. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

17. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

18. Velocity is a debt collector as defined in Wis. Stat. § 427.103(3).

19. A company meeting the definition of a "debt collector" (here, Velocity) is vicariously liable for the actions of a second company (here, Webcollex) collecting debts on its

3

behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404-06 (3d Cir. 2000).

## FACTS

20. On or about March 5, 2018, Webcollex mailed a debt collection letter to Plaintiff regarding an alleged debt owed to Velocity and originally owed to "ONEMAIN FINANCIAL" ("OneMain"). A copy of this letter is attached to this complaint as Exhibit A.

21. Upon information and belief, the alleged debt referenced in Exhibit A was incurred as the result of a short-term unsecured consumer loan, which OneMain calls a "Personal Loan," and which was used exclusively for personal, family, or household purposes. *See* https://www.onemainfinancial.com/personal-loans.

22. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

23. Upon information and belief, Exhibit A is a form debt collection letter used by Webcollex to attempt to collect alleged debts.

24. Upon information and belief, Exhibit A is the first written communication Webcollex sent to Plaintiff regarding the alleged debt referenced in the letter.

25. Exhibit A includes the following notice, which largely reflects the disclosures required by 15 U.S.C. § 1692g(a):

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

26. Exhibit A includes the following representation:

4

> Charge-off: $7,975.66 on 11/29/2017
> Post Charge-Off Interest: $.00
> Post Charge-Off Fees: $.00
> Post Charge-Off Payments: $.00

27. Exhibit A indicates that the alleged debt that Defendants are collecting had been charged-off several months before the letter was sent to Plaintiff.

28. Exhibit A threatens to collect "Post Charge-Off Interest" and other "Post Charge-Off Fees." Although the amount of each in Exhibit A is $0.00, the letter implies that there could be interest or other fees added to the debt in a future letter. *Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

29. On the face of Exhibit A, it is impossible to determine the amount that Webcollex and Velocity are attempting to collect because the letter is confusing as to whether the balance of the account is increasing as a result of interest and non-interest fees.

30. The unsophisticated consumer be confused and misled as to whether the references to "Post Charge-Off Interest" and other "Post Charge-Off Fees" meant that the account was bearing interest and other fees, and thus may actually be greater than the balance stated in Exhibit A by the time the consumer actually received Exhibit A. *See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 974-48 (7th Cir. 2004).

31. Upon information and belief, neither Velocity nor Webcollex actually add interest and costs to consumer collection accounts.

32. However, a creditor does not waive its right to interest or fees simply because it does not impose these charges during the first month after an account charges off. It is not uncommon for third-party debt collectors like Webcollex to begin to add interest after the debt has been assigned for collection purposes. *E.g., Ruge v. Delta Outsource Group, Inc.*, 2017 U.S.

5

Dist. LEXIS 35047, at *10-11 (N.D. Ill. Mar. 13, 2017) ("A jury could not find implied waiver based on the two months that Comenity Bank did not charge interest when Ruge's credit card agreement allowed the bank to delay enforcing its rights without waiver ….").

33. If the account is not actually bearing interest and fees, the references to "Interest" and "Non-Interest Fees" confusingly and misleadingly imply to the unsophisticated consumer that it is bearing interest. If the account is bearing interest, the failure to clearly disclose that interest is accruing is confusing and misleading. *See Spuhler v. State Collection Servs.*, 2017 U.S. Dist. LEXIS 210895, at *18-19 (E.D. Wis. Dec. 22, 2017) (quoting *Chuway*, 362 F.3d at 949).

34. <u>Exhibit A</u> fails to state the amount of the debt in a non-confusing manner. The unsophisticated consumer would be confused as to whether Northland was attempting to collect a balance that was increasing as a result of interest and/or non-interest fees.

35. The ambiguous zero amount itemizations could be interpreted in several different ways, only one of which may be correct:

> There are several possible ways the statement could be interpreted. For example, it is possible that, as the defendant suggests, an "unsophisticated consumer" might understand the statement to be explaining that no part of the debt is a 'collection fee' even though the Verizon agreement allows for one. On the other hand, it is also possible that an "unsophisticated consumer" would interpret the statement to mean that there is no "collection fee" now but that one could be assessed later on.

*Tylke v. Diversified Adjustment Serv.*, 2014 U.S. Dist. LEXIS 153281, at *6-7 (E.D. Wis. Oct. 28, 2014).

36. In the absence of an affirmative statement that the account was (or was not) bearing interest and non-interest fees, the ambiguous references to interest and non-interest fees "accrued since charge-off" could imply that interest and fees were accruing.

6

37. The Seventh Circuit explained in *Chuway*, 362 F.3d at 949, that "[a] letter can be confusing even to a sophisticated reader though it does not contain an outright contradiction[.]"

38. The apparent contradiction and confusion inherent in itemizing zero amounts is gratuitous. Had Exhibit A simply stated that interest was not accruing, or stated that the interest *rate* was zero, it would not have engendered such gratuitous and unnecessary confusion. *See Duarte v. General Revenue Corp.*, 2017 U.S. Dist. LEXIS 188441, at *7-9 (N.D. Ill. Nov. 15, 2017) ("Clearly, a statement that the interest rate is zero cannot possibly be a threat to charge interest. To the contrary, it is more a concession that interest can't and won't be charged. In contrast, a cost balance of zero could imply future cost charges.").

39. The debt collector does not state the amount of the debt clearly if it ambiguously implies that the debt collector may be collecting accruing interest or fees when the balance is not actually increasing. *Chuway*, 362 F.3d at 947:

> If the debt collector is trying to collect only the amount due on the date the letter is sent, then he complies with the Act by stating the "balance" due, stating that the creditor "has assigned your delinquent account to our agency for collection," and asking the recipient to remit the balance listed—and stopping there, without talk of the "current" balance.

40. Furthermore, there is no explanation in the letter as to what the non-interest "Post Charge-Off Fees" are or would be.

41. The unsophisticated consumer interprets references to "Fees" in collection letters, even when the amount is $0.00, as representations that the debt collector has a right to add charges to the alleged debt, and that charges will be sought in future letters.

42. Webcollex, however, could not add any collection fees to Plaintiff's account.

43. As a short-term, unsecured consumer loan, the alleged debt referenced by Exhibit A is a "consumer credit transaction" under the WCA, Wis. Stat. §§ 421-427.

7

44. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

45. Plaintiff obtained the personal loan from OneMain for the purpose of using the money to buy household goods and services. He is a "customer," pursuant to Wis. Stat. § 421.301(17).

46. OneMain is a "merchant" because it routinely lends money to consumers like Plaintiff. Wis. Stat. § 421.301(25). Defendants are merchants because Velocity claims to have taken assignment of Plaintiff's loan from OneMain and Webcollex is collecting on Velocity's behalf. *Id.*

47. Plaintiff obtained money on credit from OneMain. Wis. Stat. § 421.301(14).

48. Plaintiff's loan from OneMain required Plaintiff to pay interest (i.e. a finance charge) to OneMain and was payable in more than two installments. Wis. Stat. §§ 421.301(20)(a), 421.301(30).

49. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

50. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

51. Because OneMain personal loans, including Plaintiff's loan, are consumer credit transactions, Exhibit A, with its nebulous reference to non-interest "Post Charge-Off Fees," falsely states or implies that Webcollex has a right to add collection fees to the debt.

52. Even if a provision of any agreement between Plaintiffs and the original creditor would purport to permit Webcollex to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

53. The alleged debt has been accelerated and sold to a debt buyer, Velocity. There are no fees that could conceivably be added to Plaintiff's alleged debt.

54. Plaintiff was misled and confused by Exhibit A.

55. The unsophisticated consumer would be misled and confused by Exhibit A.

56. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

### *The FDCPA*

57. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to

9

protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing,*

10

*LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

58. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

59. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

60. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt.

61. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

62. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

63. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

64. Wis. Stat. § 427.104(1)(L) also specifically prohibits a debt collector from "[t]hreaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

### *The WCA*

65. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

66. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

67. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

12

68. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

69. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

70. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

71. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

72. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

13

73. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

74. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

75. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

76. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

77. Exhibit A states the "Account Balance" of the debt is $623.98, but also contains vague and ambiguous references to post-charge-off interest and fees.

78. Exhibit A fails to state the amount of the debt in a non-confusing manner. It is unclear whether the debt collector is attempting to collect interest or fees on the account.

79. Exhibit A impliedly threatens the unsophisticated consumer that interest and fees are accruing on the account.

80. Exhibit A implies that Defendants may charge "Post Charge-Off Fees" when there are no circumstances under which Defendants could actually charge such post-charge-off fees. The WCA prohibits Defendants from collecting such fees.

81. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), and 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II -- WCA

82. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

83. <u>Exhibit A</u> states the "Account Balance" of the debt is $623.98, but also contains vague and ambiguous references to post-charge-off interest and fees.

84. <u>Exhibit A</u> fails to state the amount of the debt in a non-confusing manner. It is unclear whether the debt collector is attempting to collect interest or fees on the account.

85. <u>Exhibit A</u> impliedly threatens the unsophisticated consumer that interest and fees are accruing on the account.

86. <u>Exhibit A</u> implies that Defendants may charge "Post Charge-Off Fees" when there are no circumstances under which Defendants could actually charge such post-charge-off fees. The WCA prohibits Defendants from collecting such fees.

87. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

88. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between May 24, 2017 and May 24, 2018, inclusive, (e) that was not returned by the postal service.

89. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

90. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e and 1692f and Wis. Stat. §§ 427.104(1)(j) and 427.104(1)(L).

91. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

92. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

93. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

94. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 24, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)

3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com